## Bhima Sturtevant *v.* James M. Sturtevant

Daly, C. J., Baldwin, King, Murphy and Mellitz, Js.

Argued June 3—decided July 28, 1959

*Donald O'Brien,* for the appellant (plaintiff).

*William H. Shields,* with whom, on the brief, was *Griswold Morgan,* for the appellee (defendant).

KING, J.  On July 16, 1934, the plaintiff and the defendant were divorced in Reno, Nevada.  The defendant then was, and still is, a practicing physician.  A separation agreement, hereinafter referred to as the agreement, had been executed on July 9, and at the parties' request it was approved by the court and incorporated in the divorce decree.  By the terms of the agreement, jurisdiction was expressly retained by the court to modify, "as circumstances in the future may then warrant," the provisions with regard to alimony for the plaintiff, support for the three minor children, their custody, and the defendant's visitation rights.  Actually, the decree has never been modified.  The minor children have become of age and are not involved in the present proceeding.  The plaintiff did not remarry, but the defendant did.  The agreement provided that the payments for the support of the plaintiff should cease upon her remarriage, but it did not mention remarriage by the defendant, although the divorce was absolute.

The plaintiff, now a resident of Maine, instituted this action against the defendant, a resident of Connecticut, claiming that he had not made in full the alimony payments due her under the judgment of divorce.  The relief sought by her includes money

damages and a "judgment declaring the rights and liabilities of the parties by virtue of said agreement of . . . [July] 9, 1934." There was, of course, no claim that the plaintiff was not entitled to recover in this suit any accrued arrearages of alimony which she could prove. Her right so to do was settled by cases such as *German* v. *German,* 122 Conn. 155, 158, 188 A. 429. The dispute as to whether there were any arrearages turned, as disclosed by the plaintiff's claims of law made on the trial, on whether the defendant had correctly computed the amount of the plaintiff's alimony payments under the rule set forth in the agreement. It provided that the defendant should pay, as alimony and support, "one-half . . . of his net income," of which one-third was to be alimony and two-thirds support for the children. In other words, the plaintiff was to receive, as alimony, one-sixth of the defendant's "net income." The parties are in dispute as to the meaning of the words "net income" as used in the agreement. It was also provided that "[t]he net income of the . . . [defendant] is to be determined upon the basis of his Federal Income Tax Return and in order that the . . . [plaintiff] may have accurate information relative thereto" the defendant was to send the plaintiff a copy of the return simultaneously with his filing of the original. It was further provided that the "fiscal year" with respect to payments under the agreement begins on March 15 and ends on the following March 14. The payments "to be made during a 'Fiscal Year' will be determined upon the basis of the income shown by the Federal Income Tax Return for the previous calendar year. Payments are to be made monthly . . . ." Another provision stated: "The . . . [defendant] agrees to use his

best efforts to keep the running expenses of his office down to a minimum." The court found that the plaintiff failed to prove that the defendant owed her anything. There is no claim that the defendant's income tax returns were not truthful or factually accurate.

At the time the agreement was made, alimony payments by a husband were not deductible from his income in determining the amount of his taxable income, and they were not treated as income to the wife for purposes of determining her income tax liability. *Gould* v. *Gould,* 245 U.S. 151, 154, 38 S. Ct. 53, 62 L. Ed. 211; *Douglas* v. *Willcuts,* 296 U.S. 1, 8, 56 S. Ct. 59, 80 L. Ed. 3. In 1942, however, the Internal Revenue Code was amended to make alimony payments deductible in the husband's income tax return and includible as income in the wife's return. Int. Rev. Code of 1939, c. 1, §§ 22(k), 23(u), 171, 56 Stat. 816, 26 U.S.C. §§ 22(k), 23(u), 171 (Sup. II, 1942); see 26 U.S.C. §§ 71, 215, 682 (1958). The basic claim of the plaintiff, broadly construed, is that whatever status alimony payments may have for income tax purposes, they cannot be subtracted from what is commonly understood to be net income in computing the amount which the defendant is required to pay her under the terms of the agreement.

"The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427; *Buckley* v. *Buckley,* 144 Conn. 403, 409, 133 A.2d 604. Words in an agreement "must be

accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract." *Beach* v. *Beach,* 141 Conn. 583, 589, 107 A.2d 629. The agreement as a whole must be considered, and each part given effect if possible. *Finlay* v. *Swirsky,* 103 Conn. 624, 634, 131 A. 420; *Baydrop* v. *Second National Bank,* 120 Conn. 322, 327, 180 A. 469. It is apparent from the agreement that the parties felt that the defendant's net income would be properly reflected in his income tax returns when legally prepared, as they apparently were. But it is significant that the agreement did not provide that the phrase "net income," as used in the agreement, would be whatever figure, if any, was denominated "net income" in the tax return. "Net income" was not defined in the agreement. Therefore it should be given its ordinary meaning as used in general accounting practice as distinguished from any special meaning it may have under the federal income tax laws. This is true whether we are considering the income tax laws of 1934, of the present time, or of any intermediate period.

In general accounting practice, net income, as applied to this case, would ordinarily consist of the total income received by the defendant from all sources, less the legitimate expenses of realizing it, such as office expenses or other expenses of practice. See *Gooch* v. *Commissioner of Internal Revenue,* 240 F.2d 324, 325. A deduction of the alimony paid to the plaintiff during the year covered by the return, even though presently authorized for income tax purposes, should not be made in computing the net income of the defendant under the agreement, since the payment of alimony would not constitute an expense incurred in realizing income. The finding makes it clear that the court so interpreted the

contract as to allow the defendant to make this deduction from gross income in arriving at net income as used in the agreement. The court's interpretation was erroneous and as the case was pleaded and presented constituted reversible error.

In some of the assignments of error, the plaintiff sought to eliminate, as without support in the evidence, certain findings essential to the judgment. Practice Book § 447. This form of assignment imposed upon the defendant, the appellee, the burden of preparing a narrative of the supporting evidence, if there was any, in an appendix. Practice Book § 448. In fact, neither party filed any appendix. With these portions of the finding stricken, as they must be because of the lack of any appendix, there is no adequate support for the judgment, and a new trial is required on this ground alone. *Vitale* v. *Gargiulo,* 144 Conn. 359, 363, 131 A.2d 830.

Since there must be a new trial, it is unnecessary for us to consider other claims of error. In an endeavor to facilitate the final disposition of this litigation, however, we consider the plaintiff's claim that the court should have rendered a declaratory judgment. Neither in the body of the complaint nor elsewhere were there allegations setting forth what the dispute under the agreement was, nor what particular rights and liabilities the plaintiff claimed should be adjudicated. Actually, the only part of the agreement in apparent dispute was the definition and application of the phrase "net income." The plaintiff's general claim for a declaratory judgment fell short of a proper compliance with Practice Book § 278 (b), providing that "[t]he prayer for relief shall state with precision the declaratory judgment desired." See Practice Book, Forms Nos. 386, 388. There was no error in the court's failure to

render a declaratory judgment. Furthermore, if the plaintiff obtains judgment for whatever arrearages she proves are owing to her, the questions of law would necessarily have been determined in that proceeding and there would seem to be no need of any further relief, by way of declaratory judgment or otherwise. The court would be fully justified, on this ground, in refusing a declaratory judgment. Practice Book § 277 (a), (b), (c); see *Holt* v. *Wissinger*, 145 Conn. 106, 113, 139 A.2d 353. In these days of crowded dockets, the court's time must not be taken up in the determination of actions seeking unnecessary declaratory judgments.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred except DALY, C. J., who died after the cause was argued and before the opinion was adopted by the court.