## LEWIS *v.* LEWIS

[No. 87, September Term, 1969.]

*Decided December 8, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Ronald L. Ogens,* with whom was *Nelson Deckelbaum* on the brief, for appellant.

*James K. Foley* for appellee.

SMITH, J., delivered the opinion of the Court.

This case involves the interpretation of a divorce decree which incorporated by reference a portion of a separation agreement. We have no doubt but that if the parties were writing the agreement today, the terms would have been defined with greater precision.

Sylvia Lewis, appellant and cross-appellee, and Bernard Lewis, appellee and cross-appellant, entered into articles of separation on May 21, 1956. The divorce decree passed by the Circuit Court for Montgomery County on March 27, 1961, incorporated by reference paragraphs fifth and sixth of the separation agreement relative to custody of the minor child and support. The pertinent portion of the agreement is as follows:

> "The husband shall, commencing on the 1st day of June 1956, make monthly payments, in advance, tax free, of Two Hundred and Fifty Dollars ($250.00), 60% of which is for the support of the wife and 40% for the support of the child, payable to the wife for her support and maintenance and for the support and maintenance and education of their child, with the express agreement that commencing on April 15, 1957, the husband shall pay a sum equal to 50% of his net income to his wife and child for their support, payable in advance, in twelve (12) monthly installments, and the same basis shall apply each year thereafter, *based on the preceding year's net federal income tax return* filed by the husband. * * *
>
> "* * * The sum of $250 per month for the year of 1956 is accepted on behalf of the wife and child, based on the fact that the said husband maintains he is earning approximately $5,000 per year." (emphasis added)

At the time of the preparation of the agreement and in the divorce proceeding the parties appear to have been represented by counsel other than their present counsel.

Mrs. Lewis filed a petition in the divorce proceeding asking the court to assess arrearages against Mr. Lewis under the decree of March 27, 1961, and to enter judgment in her favor for the amount of these arrearages. The chancellor (Pugh, J.) interpreted "net income" to

mean "net taxable income" and determined there were no arrearages.

Mrs. Lewis in her appeal presents two questions, (1) whether the chancellor erred in interpreting "net income" as used in the decree to mean "net taxable income" as determined for federal income tax purposes, and (2) whether the chancellor erred in finding that Mr. Lewis was not in arrears under the decree. Mr. Lewis in his appeal contends that the chancellor erred in overruling his demurrer, contending that equity has no jurisdiction to entertain the petition of Mrs. Lewis to assess arrearages. We shall affirm the action of the chancellor in both rulings on the law and reverse him on his finding of facts.

I

Mrs. Lewis contends the definition of "net income" here used was deficient in two respects, namely the fact that Mr. Lewis was permitted to deduct alimony payments in computing net income and that in computing net income, deductions were permitted for depreciation, a capital loss on a stock investment and other similar items normally permitted as deductions in the computation of income for Federal income tax purposes. Mrs. Lewis calls the depreciation item "a mere bookkeeping or paper loss" and likewise labels the capital loss a "paper loss".

The precise question here involved does not appear to have previously reached this Court. Our predecessors in the case of *Welsh v. Canfield,* 60 Md. 469 (1883), in a case involving construction of a partnership agreement, commented somewhat pithily relative to the analogous term "net profits" as follows:

> "To say that if 'the net profits'—that is, the surplus left after deducting all losses, for such only can be the meaning of the term 'net profits'—'in any one year should be so small that the portion of said Welsh should not amount to $2500, that then his account shall be credited a

sum sufficient to make that amount' — that amount, plainly, of net profits—does not mean whatever sum will give him the equivalent for not realizing $2500 in net profits, or in other words he shall be so credited in his account as if he had gained that amount, we cannot comprehend the significance of the language employed. To credit Welsh with a sum as 'net profits,' and then charge him with a loss that not only eats up the sum credited but inflicts an absolute loss beyond is not giving him anything in the nature of a net gain, but only giving him the benefit of a certain sum to which it would be a misnomer to apply the term *net*." *Id.* at 475. (emphasis in original)

Mrs. Lewis relies on the cases of *Sturtevant v. Sturtevant*, 146 Conn. 644, 153 A. 2d 828 (1959) ; *Silver v. Silver*, 12 App. Div.2d 325, 211 N.Y.S.2d 348 (1961), and *Estate of Matthews*, 210 Wis. 109, 245 N. W. 122 (1932). In *Sturtevant, supra*, the agreement provided, "The net income of the * * * [defendant] is to be determined upon the basis of his Federal Income Tax Return and in order that the * * * [plaintiff] may have accurate information relative thereto" the defendant was to send the plaintiff a copy of the return simultaneously with the filing of the original. The "fiscal year" with respect to payments under the agreement was to begin on March 15 and end on the following March 14. The agreement further provided that payment "to be made during a 'Fiscal Year' will be determined upon the basis of the income shown by the Federal Income Tax Return for the previous calendar year. Payments [were] to be made monthly * * *." The agreement was made in 1934. At the time the agreement was made, alimony payments by a husband were not deductible from his income in determining the amount of his taxable income, and were not treated as income to the wife for purposes of determining her income tax liability. Revisions of the Internal

Revenue Code in 1942 made the alimony payments deductible in his return and includible as income in her return. The husband sought to deduct the alimony payments. The Court there said:

"It is apparent from the agreement that the parties felt that the defendant's net income would be properly reflected in his income tax returns when legally prepared, as they apparently were. But it is significant that the agreement did not provide that the phrase 'net income,' as used in the agreement, would be whatever figure, if any, was denominated 'net income' in the tax return. 'Net income' was not defined in the agreement. Therefore it should be given its ordinary meaning as used in general accounting practice as distinguished from any special meaning it may have under the federal income tax laws. This is true whether we are considering the income tax laws of 1934, of the present time, or of any intermediate period.

"In general accounting practice, net income, as applied to this case, would ordinarily consist of the total income received by the defendant from all sources, less the legitimate expenses of realizing it, such as office expenses or other expenses of practice. * * * A deduction of the alimony paid to the plaintiff during the year covered by the return, even though presently authorized for income tax purposes, should not be made in computing the net income of the defendant under the agreement, since the payment of alimony would not constitute an expense incurred in realizing income." *Id.* at 648.

In *Silver v. Silver, supra,* the agreement after providing for the payment of a base alimony for the years 1954 through 1958 of $11,000.00 had a provision calling for payment of:

"an amount * * * equal to thirty-three and one-third (33⅓%) per cent of any increase of the Husband's 'Net Income' before federal income taxes over Thirty-two Thousand ($32,000) Dollars in each of said years ($32,000 being item 3 on page 3 of Husband's federal tax return for the year 1952, i.e. Net Income), but not to exceed One Thousand ($1,000) Dollars in each of said years, as the same shall be reflected in the Husband's federal income tax return."

The husband's income in the years 1955 and 1956 would have been in excess of $32,000 had it not been for the deduction representing the $11,000 alimony payment which appeared in his return. The wife sued. The court refused to allow the deduction, stating:

"In the pilot return of 1953 there was no alimony deduction as no alimony was paid in the prior year. It is evident from the entire agreement that the alimony was, with certain corrections, to approximate one third of defendant's income. The use of tax returns was to provide a convenient method of determining both income and the share payable to plaintiff. * * * Furthermore, providing defendant's contentions are correct, if he should at some later date pay alimony to his second wife that also would be a deductible item. It passes the bounds of imagination that this result would represent the intent of the parties." *Id.* at 326.

*Estate of Matthews, supra,* concerned division of income in a trust between life tenant and remaindermen. The testator had died in 1913 within a few months of the ratification of the income tax amendment. There was nothing in the will tying the term "net income" to income tax provisions. We see no analogy to this case.

More nearly in point is the Washington case of *Berry*

*v. Berry,* 50 Wash. 2d 158, 310 P. 2d 223 (1957). There the agreement in controversy provided:

> "Each year hereafter, the Husband shall pay to the Wife, as support money, a sum equal to 12% of his annual net income (before Federal Income Tax) in excess of $5,000.00 as shown upon his Federal Income Tax Return. Such sum shall be due and payable on or before April 1st of each year, commencing April 1, 1952. Said payment due April 1, 1952, shall be for the full calendar year of 1951."

The agreement was incorporated into the divorce decree. The husband contended that his payments were to be made on the basis of the "annual net income" on which his income tax was computed. The wife contended "* * * that the term 'net income' as used in the agreement was used by the parties in its ordinary sense, that is, the amount remaining after deducting ordinary business expenses from gross income, and that reference to federal income tax returns was only made to furnish * * * some fairly reliable source of information as to the amount of * * * [husband's] income." The court said:

> "We are not in accord with the construction placed on the term 'net income' by the wife and adopted by the trial court, in the face of a specific declaration that the husband shall pay to his wife a certain percentage 'of his annual net income (before Federal Income Tax) in excess of $5000 as shown upon his Federal Income Tax Return.' It is difficult to conceive of more apt language to indicate an intention that the payments were to be a percentage of the husband's net income as computed for income tax purposes." *Id.* at 163.

It seems to us that careful examination of the portions of the agreement adopted by the decree make it clear that "net income" is equated to "net taxable in-

come" in the original agreement as soon as a prior year's income tax return was available, that is approximately nine months after the original payments began. The agreement says, "[T]he husband shall pay a sum equal to 50% of his net income to his wife and child for their support * * * and the same basis shall apply each year thereafter, *based on the preceding year's net federal income tax return filed by the husband.*" (emphasis added) The parties here did not say the net income of the husband was to be based on his "federal income tax return", but said it was to be based on his "net federal income tax return." We conclude the insertion of the word "net" was with the intention that "net income" should mean "net taxable income". Alimony was deductible in the computation of net income for federal tax purposes as were each of the other items concerning which the wife made complaint. Accordingly, the chancellor's ruling in this regard was correct.

## II

Mrs. Lewis next contends that even if her contentions as to law are overruled, that the court has erred in its determination of the facts, with which position we are in agreement.

The chancellor made a finding of fact as to the net income of Lewis for the years 1961 to 1967, inclusive. Mr. Lewis was obliged to pay 50% of his net income to his wife as alimony and for support of the child. Mrs. Lewis testified as to the payments she received. Mr. Lewis did not dispute her testimony. The income as found by the court was in accordance with the actual income tax returns of Lewis filed in evidence. A table of his income and the amounts paid to Mrs. Lewis is thus:

| Based on Prior Year | Year Paid | Amt. Paid | Income as found by the Court |
|---|---|---|---|
| 1961 | 4/62-3/63 | $1,474.92 | $2,950.02 [1] |
| 1962 | 4/63-3/64 | $1,542.96 | $3,905.21 |
| 1963 | 4/64-3/65 | $1,605.72 [2] | $5,305.51 |
| 1964 | 4/65-3/66 | $1,572.00 | $5,007.32 |
| 1965 | 4/66-3/67 | $1,680.00 | $4,500.00 |
| 1966 | 4/67-3/68 | $1,680.00 | $2,729.00 |
| 1967 | 4/68-8/68 | $ 840.00 | $5,990.00 |

From this, arrearages are determined as follows:

| Year | 50% of Net Income | Amount Paid | Arrearage |
|---|---|---|---|
| 1961 | $1,475.01 | $1,474.92 | $ 0.09 |
| 1962 | $1,954.60 | $1,542.96 | $ 411.64 |
| 1963 | $2,652.75 | $1,605.72 [2] | $1,047.03 |
| 1964 | $2,503.66 | $1,572.00 | $ 931.66 |
| 1965 | $2,250.00 | $1,680.00 | $ 570.00 |
| 1966 | $1,364.50 | $1,680.00 | ($ 315.50) |
| 1967 | $ 998.33 [3] | $ 840.00 [4] | $ 158.33 |
| | | Total arrearage | $2,803.25 |

Mrs. Lewis is entitled to receive these arrearages.

### III

Mr. Lewis contends that the chancellor was in error in overruling the demurrer of Mr. Lewis to the petition filed by Mrs. Lewis. He points to paragraph 14 of the articles of separation which reads:

"If the husband fails in the due performance of his obligations, hereunder, the wife shall

---

1. Income tax return shows $2,950.02, while chancellor found $2,950.00.
2. Mrs. Lewis testified to $1605.60 as 12 times the monthly payment of $133.81 she testified she received. The answer should be $1605.72.
3. 50% of Net Income for ⅓ year.
4. Amount paid for ⅓ year.

have the right at her election, to sue for damages for a breach of this agreement, or to rescind the same and seek such legal remedies as may be available to her. Nothing herein contained shall be construed to restrict or impair the wife's right to exercise this election."

Mr. Lewis then proceeds to make the argument that although Code (1966 Repl. Vol.) Art. 16, § 28 grants the equity courts "the power to enforce separation agreements," [5] that the parties have a right to waive or limit their legal remedies in the event of breach of the agreement, that Mrs. Lewis has done this and that equity has no jurisdiction of an action purely for breach of contract, citing *Perlmutter v. Minskoff*, 196 Md. 99, 75 A. 2d 129 (1950).

This is not an action for breach of contract. Mr. Lewis apparently overlooks the fact that the parties here requested the inclusion of paragraphs five and six of the articles of separation in the court's decree, which was done. Prior to the passage of a decree, paragraph fourteenth might have limited the actions the wife could bring. Thereafter, it was the decree of the Circuit Court for Montgomery County which she was seeking to enforce. In *Emerson v. Emerson*, 120 Md. 584, 87 A. 1033 (1913), Judge Constable said for the Court:

"We are of the opinion, that if a Court approves the provisions of an agreement as to alimony it can incorporate them in its decree, but it, nevertheless, has the same power of modification of the decree as it had in the absence of an agreement. If then remarriage is a ground for the annulment of the provision for alimony, the annulment will take place the same in a decree based upon an agreement as in one founded upon testimony." *Id.* at 597.

5. The comment in *Zouck v. Zouck*, 204 Md. 285, 295, 104 A. 2d 573 (1954), and in *Reichhart v. Brent*, 247 Md. 66, 71, 230 A. 2d 326 (1967), is that "this power is at least implicitly granted".

See also *Knabe v. Knabe,* 176 Md. 606, 613, 6 A. 2d 366 (1939).

It would be a peculiar rule of law that would hold that a court after incorporating the provisions of an agreement into a decree could modify the decree, but would be powerless to enforce it.

> *Decree affirmed in part and reversed in part and case remanded for passage of a decree in conformity with this opinion; costs to be paid by the appellee and cross-appellant.*