## ROBERTA Z. RATRIE *v.* HARRY RATRIE, JR.

[No. 1348, September Term, 1976.]

*Decided July 12, 1977.*

The cause was argued before THOMPSON, MOYLAN and LISS, JJ.

*Z. Townsend Parks, Jr.,* with whom were *Wright & Parks* on the brief, for appellant.

*Francis N. Iglehart,* with whom were *Hessian & Iglehart* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

This appeal concerns the meaning of the words, "annual earned income" as used in a separation agreement between the parties to determine the amount of alimony to be paid by the husband to the wife.

Both parties to these proceedings have accepted the statement of facts as stated by the trial judge, presiding in

the Circuit Court of Baltimore City, with certain additions. We shall do likewise:

"Paragraph 4 of said [separation] agreement reads as follows:

'4. The payments provided for in the first paragraph of this agreement are based on the Husband's gross earnings for the year 1965 in the amount of Sixteen Thousand Five Hundred ($16,500.00) Dollars, as reflected in his income tax return. The Husband convenants and agrees that if there is any increase in his annual earned income above the aforesaid $16,500.00, he will pay unto the Wife as additional alimony thirty (30%) percent of any additional earned income. The aforesaid payment of 30% of any additional earned income shall begin on May 1, 1968, and shall be paid semi-monthly thereafter together with the payments established by this agreement.

'To determine the amount of the semi-monthly increase, for example, there is subtracted the agreed base figure of $16,500.00 from the earned income for the year 1967, and then taking 30% of any excess over the base figure of $16,500.00 and dividing this figure by 24, the result shall be added to the regular semi-monthly payment, effective May 1, 1968.

'The Husband shall furnish the Wife annually, no later than April 20, verification of his earnings for the preceding year by supplying her with a copy of his Federal income tax return for the preceding year.

'The provisions made in this agreement for alimony and support of the Wife shall be unaffected by any employment which the Wife may hereafter obtain and shall be paid to her irrespective of her earnings.'

"A subsequent Decree was entered on March 6, 1975, as a result of an open court hearing on exceptions to the Master's report which was previously filed. In that Decree, the Court stated, 'The Court * * * determined that the language of said agreement in paragraph 4,' in the December 1, 1966, agreement between the parties, 'i.e., *"annual earned income,"* includes all earnings of the Defendant whether from salary, bonuses, trustees' commissions, directors' fees, etc., and are to be included as earned income in the calculations of alimony payments due under said agreement, but alimony does not include unearned income such as interest, dividends, etc.' [See Exhibit No. 1]

"On September 28, 1976, the Petitioner, Roberta Z. Ratrie, filed a subsequent petition for citation for contempt, or in the alternative, for the entry of a decree in personam. The decision of this Court as to the validity of the petition before it again rests on the interpretation of paragraph 4 of the agreement of December 1, 1966.

"The facts submitted to the Court are not in dispute. On or about April 17, 1975, Mr. Ratrie acquired the Russell L. Elliott Incorporation, a small, non-union paving and construction company. Prior to this date, Mr. Ratrie was President of Ratrie, Robbins & Schweizer, Inc., a union paving and construction company. Fifty percent of the corporate stock was held by him, and fifty percent was held by Mr. Robbins. Mr. Ratrie further testified that his reasons for the acquisition of the Russell L. Elliott Corporation was to enable him to bid either on union or non-union contracts. He further testified that the acquisition of the company was in hopes of increasing his earned income and not in anticipation of acquiring a tax shelter or a subsequent tax loss.

"The Elliott Corporation was operated as a Subchapter S which is a valid, legal business entity, the simplistic definition being a corporate structure which is treated like a partnership. It is true that although a Subchapter S corporation is treated like a partnership, there are various legal and tax differences."

The appellee and Mr. Robbins transferred a Mr. Story and three other men, who had worked with Ratrie, Robbins & Schweizer, Inc. from five to fifteen years, to the staff organization of Elliott Corporation and Mr. Story was made president. Story, Robbins and the appellee were the three directors of the Elliott Corporation. The appellee's contacts with Mr. Story in directing the operations of the Subchapter S Corporation were estimated at three to four times per week.

The principals in the parent organization decided to acquire the Elliott Corporation in order to be able to do non-union paving work. They determined that this was the only way in which they could remain competitive, particularly after a nine week strike involving the parent organization, which remained a union contractor. The survival of the parent company and the profit motive were the sole reasons for acquiring the corporation that became a Subchapter S company. The corporate return for Russell L. Elliott, Inc. shows a long-term loss on the sale of various construction equipment in the amount of $26,869. This amount, when added to depreciation of $28,490 accounts for over 50% of the net operating loss for the Subchapter S Corporation, as shown on its 1975 tax return. The corporate tax return shows that the appellee devoted no time to the business.

The trial judge found that the term "annual earned income" included any losses derived from Subchapter S Corporation and any profits which should accrue to the Subchapter S Corporation in the future. We do not agree. Initially, we point out that annual earned income does not mean adjusted gross income as used in the federal income

tax return.[1] If you examine the 1975 income tax return it shows income from "wages, salaries, tips and other employee compensation $78,731, dividends $151, interest $2,999" and under "income other than wages, dividends, and interest," a loss of $58,548, making a total adjusted gross income of $23,333. It is apparent to us that although reference is made to the income tax return in the first sentence of paragraph 4, the use of the term "annual earned income," which is not a term used on the tax return, shows a clear intention that investment losses should not be taken into account in determining the amount of alimony due each year. The decree of March 6, 1975, properly construed the meaning of the term when it said that " 'annual earned income,' includes all earnings of the Defendant [appellee] whether from salary, bonuses, trustees' commissions, directors' fees, etc., and are to be included as earned income in the calculations of alimony payments due under said Agreement, but alimony [annual earned income] does not include unearned income such as interest, dividends, etc."

We must look to other than the income tax returns for a determination of what constitutes "earned income" under the agreement. Citing 79 A.L.R.2d 609-637, the appellee argues that the terms "earnings" or "earned income" have a more extensive meaning than wages and that the term implies some degree of management or supervision and not merely income derived from the ownership of property. With this we entirely agree. He argues, however, that the stringent provisions of the Federal labor legislation require that the appellee must separate himself from the management of the non-union corporation in order to be able to own both a union and a non-union shop citing *Operating Engineers v. N.L.R.B.*, 518 F. 2d 1040 (1970). This, he

1. In Lewis v. Lewis, 256 Md. 45, 259 A. 2d 246 (1969), the Court construed a separation agreement which was "based on the preceding year's net federal income tax return filed by the husband." It held that the figures shown on the prior year's return controlled the alimony payments under the express language of the agreement, and thus previous alimony paid was deductible in determining that figure. In the instant case, however, the parties were careful not to tie the alimony payments to the tax return but to use the return only as a means of verifying the earnings of the husband.

contends should not prevent a finding of active participation for alimony determination purposes. We do not think that the appellee is in any position to argue that insofar as the National Labor Relations law is concerned, he is not involved in management, but insofar as what constitutes earned income under a separation agreement with his wife, he is involved in management. Indeed, his testimony in the instant case shows that he was not involved with management. For this reason the income or losses that are received from the Subchapter S Corporation appear no different to us than the receipt of dividends or gains or losses from the sale of stock in any other corporation.

> *Decree reversed.*
> *Case remanded for passage of a decree in accordance with this opinion.*
> *Appellee to pay the costs.*