**PATTERSON, Appellee,**

**v.**

**PATTERSON, Appellant.**

[Cite as *Patterson v. Patterson* (1991), 72 Ohio App.3d 818.]

Court of Appeals of Ohio
Franklin County.

No. 90AP–451.

Decided March 12, 1991.

*Jeffrey A. Grossman Co., L.P.A.,* and *Jeffrey A. Grossman,* for appellee.

*Martin, Pergram, Browning & Parker* and *Robin L. Parker,* for appellant.

---

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of appellant, David Patterson, from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, finding him in contempt for failing to pay alimony pursuant to a 1984 separation agreement. The parties' March 15, 1984 separation agreement states, in pertinent part:

"FIRST: ALIMONY

"The Husband shall pay to the Wife as and for her support a sum equal to fifty percent (50) of his total net annual income. Said duty of support shall continue until the said Wife dies, or remarries. Husband shall provide evidence of his net income on reasonable request of the Wife. This alimony provision shall be subject to the continuing jurisdiction of the Court.

"Husband will provide to the extent of his financial ability a college education for the parties' children including books, tuition and board at an accredited college for not more than four years each.

"SECOND: INCOME TAX

"The Husband shall be entitled to the income tax refunds due from the IRS and State of Ohio. The Husband shall also have the proceeds of the life insurance loans applied for and pending."

Addendum (April 23, 1984):

"3 Husband agrees all personal deductions from his pay will be made from his paycheck and that he authorizes every other paycheck to be paid directly from his employer to Wife (payroll deduction) in the event that he fails to have said check deposited directly in the account."

In 1989, appellee filed a motion requesting that the trial court find the appellant in contempt and award to appellant the cost of her attorney fees. Specifically, appellee asserted that she was entitled to half of appellant's 1985, 1986, 1987 and 1988 income tax refunds and half of the unemployment compensation appellant received.

After a hearing, the referee issued his report recommending that appellant be found in contempt, sentenced to thirty days in jail, and fined $250—or

purge his contempt by paying $53,825 [1] to appellee and half the net amount of the unemployment compensation he received. Appellant filed objections to the referee's report and appellee filed a memorandum in opposition. In overruling appellant's objections, the trial court adopted the report and recommendation of the referee; however, the trial court modified the amount appellee was to receive to $26,912.50 (representing half of the appellant's income tax refunds based upon the $53,825 amount he would have received had he filed individually), one-half of the unemployment compensation received by appellant in 1988 and 1989, and $350 in attorney fees. The appellant is now before this court asserting the following two assignments of error:

"1. Appellant complied with the Addendum to the parties' Separation Agreement and the Court committed prejudicial error, as a matter of law, by finding Appellant in contempt of Court notwithstanding compliance with the Addendum.

"2. The trial court committed prejudicial error in that the trial court failed to declare that the term 'net income' as used in the parties' Separation Agreement means:

"Income subject to taxation after allowable deductions and exemptions have been subtracted from gross or total income. (*Black's Law Dictionary* [.] )"

The issues in this case necessarily hinge upon the definition of "net income" as used in the parties' separation agreement. Therefore, appellant's second assignment of error will be discussed initially. Appellant asserts that since the term "net income" was not defined by the parties, it should be given its plain and ordinary meaning. Thus, as defined in Black's Law Dictionary, "net income" means "income subject to taxation after allowable deductions and exemptions have been subtracted from gross or total income."

Appellee argues that the definition of "net income" is set forth in this court's decision in *Chaney v. Chaney* (1985), 24 Ohio App.3d 169, 24 OBR 258, 493 N.E.2d 997. *Chaney*, a case involving the determination of "net income" for purposes of child support, stated that " 'net income' as used in this agreement means gross income less the expenses in realizing the income minus taxes." *Id.*, 24 Ohio App.3d at 170, 24 OBR at 260, 493 N.E.2d at 999.

In a situation where an agreement fails to define an essential term, the cardinal rule is to ascertain the intention of the parties. However, in the facts at bar, not only did the parties fail to define the term "net income" in their

---

1. This amount represents the total amount in income tax refunds appellant would have received in tax years 1985, 1986, 1987 and 1988, had he filed his income tax return individually. In 1986, appellant remarried and since then appellant has filed joint income tax returns with his wife. Thus, appellant's actual total income tax refunds for tax years 1985, 1986, 1987 and 1988 were in the amount of $80,806.

separation agreement, there was no evidence in the record which was offered by either party to explain what was meant by the term "net income" at the time they entered the agreement. Absent evidence regarding the intention of the parties, the rules of construction require that undefined terms be given their ordinary and common meanings.

The term "income" is defined differently by the Internal Revenue Code,[2] Black's Law Dictionary,[3] and the Child Support Guidelines,[4] and these three examples are not all inclusive. "Income" may involve money received as a result of a business enterprise, salary or wages or may be generated from passive participation such as stock dividends or bank account interest. Likewise, income may be derived from a nontaxable source, such as tax-free municipal bonds.

The term "expenses" might include all depreciation in the conduct of a business. This usually does not include income taxes in the net income of the business, but does include real estate taxes, personal property taxes, sales taxes, gasoline taxes, etc. Also included would be any expense which facilitated the production of the wages and the salaries, such as automobile expenses associated with work, clothing and equipment used on the job, and client or business development expenses, to name a few examples. It is important to note that these types of business expenses are not tax deductible for an individual taxpayer, except in a very limited sense.

The term "taxes" may include real estate taxes, personal property taxes, sales taxes, gasoline taxes, cigarette taxes, municipal income tax, state income tax and federal income tax, a list that is not exhaustive. Some of these enumerated taxes are deductible for federal personal income tax purposes and some are only business deductions.

"Net income," as used in general accounting practice, can be defined as "the amount a person receives after taxes and other deductions," Introduction to Business—The Economy and You (1986), South–Western Publishing Co.; or "A deduction is money withheld from your gross pay for taxes, insurance premiums, or other purposes. The money that you receive, after deductions are taken out, is called net income." Occupational Mathematics (1986), South–Western Pub. Co.

---

**2.** Section 61, Title 26, U.S.Code.

**3.** Income is defined in Black's Law Dictionary (5 Ed.1979), as "the return in money from one's business, labor, or capital invested; gains, profits, salary, wages, etc." There is a subheading under this definition which provides as follows: "Net (business) income. Net profit of business arrived at by deducting operating expenses and taxes from gross profits."

**4.** C.P.Sup.R. 75.

Consequently, since the term "net income" in its plain and ordinary meaning has traditionally been used as it relates to a business, this court is reluctant to apply its plain and ordinary meaning to circumstances which involve an individual's income. Furthermore, as discussed, there are inherent problems in adopting the *Chaney* definition or the definition as set forth in Black's Law Dictionary, since the component terms of those definitions are ambiguous.

The term "net income" has been used in various contexts, *i.e.*, business or corporation, estate, personal, railroad, real estate and trust estate. In these different contexts, "net income" may or may not be calculated the same as it is computed for income tax purposes. Thus, in the facts before this court, the computation and definition of "net income" may be dispositive of income computed for tax purposes. See *Reed v. Reed* (Tenn.App.1981), 625 S.W.2d 276–277.

Case law has defined "net income," for purposes of alimony, inconsistently. See 79 A.L.R.2d 604. In *Sturtevant v. Sturtevant* (1959), 146 Conn. 644, 648, 153 A.2d 828, 831, "net income" was defined as total income less legitimate expenses realizing it, without a deduction for alimony payments. In *Lewis v. Lewis* (1969), 256 Md. 45, 259 A.2d 246, "net income" meant "net taxable income" and, therefore, alimony was deductible in computing the husband's obligations.

"Net earned income" was defined as the "gross amount of salary, wages or commissions, less all deductions by the employer for obligatory statutory or contractual obligations of the employee." *Sunbury v. Sunbury* (1988), 13 Conn.App. 651, 661, 538 A.2d 1082, 1088. "Withholding of income taxes, FICA and wage garnishment are examples of deductions required by law." *Id.* In searching for the most appropriate definition of "net income" applicable to the facts of this case, this court is somewhat reluctant to construe a meaning which is dependent upon component terms which also are not defined.

The trial court relied upon this court's definition in *Chaney*, the definition as asserted by appellee, to define "net income." See *Chaney, supra.* However, *Chaney* is inapplicable and, thus, distinguishable from the facts at bar. The issue in *Chaney* dealt with the definition of the term "net income" as used in a separation agreement for purposes of child support. In light of the fact that the Ohio Supreme Court promulgated child support guidelines [5] after *Chaney* was decided, this court did not have the benefit of the definitions regarding gross income for purposes of computing child support when it was

---

5. C.P.Sup.R. 75.

decided. Thus, the issues addressed in *Chaney* may or may not be resolved in the same manner in light of the child support guidelines.[6]

Furthermore, if this court were to adopt the definition of "net income" as set forth in *Chaney*, we would need to establish clearer definitions of "income," "expenses" and "taxes" before *Chaney* could be applied. The term "net income" is more commonly used in relationship to a business. In fact, the federal Internal Revenue Code does not define the term "net income" as that term applies to an individual's income. Thus, in order to accept either party's proposed definition, this court would have to define the component terms of "income," "expenses," "taxes," and "allowable deductions" before it could accept the *Chaney* definition or the definition of "net income" as set forth in Black's Law Dictionary.

In the facts before this court, the record indicates, specifically in the addendum to the separation agreement, that appellant authorized that every other paycheck be paid to the appellee directly in the event that he failed to have the check deposited directly in the account. Furthermore, appellant testified that whenever he would receive a paycheck, he would send half of the "net" check or take-home pay to appellee. Appellant claimed the maximum number of exemptions, fourteen, so that he could realize the greatest amount of take-home pay. Thus, this construction which the parties gave to the agreement by their acts and conduct before any controversy arose as the meaning of "net income" is also an important consideration. It is also important to consider the reasoning and necessity of the "SECOND: INCOME TAX" provision set forth in the parties' separation agreement.

In its March 19, 1990 decision, the trial court stated that neither party presented evidence of intent, respectively, regarding the definition of "net income," as used in the separation agreement. If this separation agreement were written today, there is no doubt that the term "net income" would be defined by the parties with greater precision. Since it is paramount that the intention of the parties be given effect in interpreting a separation agreement, this case must necessarily be remanded since the trial court based its decision on insufficient evidence.

As yet, there is no standard definition of "net income" as that term pertains to the separation agreement. Furthermore, this court declines to set forth a standard definition of "net income," in such instances. The term "net income," as demonstrated by case law, is uniquely defined by the parties, and

---

6. The issue of child support as it relates to the definition of "net income" is not before this court; thus, *Chaney* is distinguishable.

may be interpreted differently for each set of circumstances depending upon the definition ascribed to the component terms, such as "income," "taxes," and "expenses." Thus, upon remand, the trial court will need to discern the definition of "net income" based upon the intent, and conduct, of the parties.

Accordingly, appellant's second assignment of error is well taken and is sustained, but only to the extent as discussed herein.

In the first assignment of error, appellant asserts that the trial court erred in finding appellant in contempt of court notwithstanding his compliance with the addendum as set forth in the separation agreement. In light of this court's disposition of appellant's second assignment of error, the issue of contempt is unresolved until the trial court is able to define "net income" based upon sufficient evidence. Once the term "net income," as set forth in the parties' separation agreement, is defined, the alimony amount can be computed and the issue of contempt can then be resolved. Accordingly, to the extent discussed herein, appellant's first assignment of error is well taken and is sustained.

Based on the foregoing, appellant's first and second assignments of error are sustained. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

STRAUSBAUGH and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, sitting and hearing the appeal pursuant to active duty prior to his retirement, and assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution, subsequent to his retirement.