[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This limited contested dissolution action hearing was completed on June 14, 1995. Both parties were represented by counsel and testified at trial. They were married in New Canaan, Connecticut on May 4, 1986, CT Page 9574 and have three minor children, Elizabeth, Christina and Peter, who are now 8, 6 and 4 years of age. Both parties have been residents of this state for more than one year from the date the complaint was filed in court; therefore, the court has jurisdiction. From the evidence presented, the court finds the marriage has broken down irretrievably; therefore, a decree of dissolution may enter on that ground. (Section46b-40(c)(1), Connecticut General Statutes)
The court will recite some background facts that are not in dispute because they are relevant to some of the statutory criteria for the financial awards that will be ordered. See § 46b-81, § 46b-82, § 46b-84
and § 46b-62. This is a nine year marriage. The plaintiff (hereafter the wife) is now 38 years of age and the defendant (hereafter the husband) is age 48. They are in reasonably good health and gainfully employed. The wife earned her B.A. degree in Psychology from the University of California and the husband completed three years of college at St. Benedictine University. At present, the wife is working about twenty hours per week as a part time financial consultant. She has been the primary caretaker of their three minor children and the traditional homemaker for the family. The husband has worked throughout the marriage in various executive search firms in Fairfield County which specialize in placing clients as chief executive officers and management positions. At the present time, he is a fifty per cent equal equity partner with a Mr. Brad Hartman in a firm known as the Tucker Group with an office in Westport, Connecticut.
The business requires both partners to devote full time to make it a financial success, and they have one other salesman working for them. Their earnings are derived solely from commissions that are paid to the firm only after an executive is placed, and in some cases, placements can take up to six months to a year. The commission income is sporadic. Some months the earnings are minimal; other months it is substantial. The amount the husband and his partner will earn fluctuates each month depending on the number of clients that are placed and the prosperity of the general economy in Fairfield County.
During the first five years of the marriage, the husband's net annual income was substantial, ranging from $125,000 to $150,000 a year. His income enabled the family to enjoy a comfortable lifestyle. The wife worked in the business with him, and through their joint efforts, the business was successful and they prospered. They were able to purchase a large, ten room residence with a swimming pool on two acres of land in Weston, Connecticut. The family vacationed each winter in Florida at a condominium owned by the husband and also spent the CT Page 9575 Christmas vacation skiing in Aspen, Colorado. In early 1992, the marriage and the business began to deteriorate.
The court finds the wife's testimony as to the cause of the breakdown of the marriage credible and probative. She testified the husband became addicted to alcohol which caused a substantial decrease in his earnings, and he became abusive to her verbally and emotionally. The court finds the husband primarily at fault for the marital breakdown.
Fault, however, is only one of the twelve statutory criteria the court must consider in deciding alimony under § 46b-82, the alimony statute. The court must also consider the length of the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, the estate and needs of the parties. In addition, the court must consider the opportunity and ability of each party to acquire capital assets in the future and their respective contributions in acquiring and preserving the capital assets acquired during the marriage. (Sec. 46b-81)
The issues which are in contention are the division of assets and an equitable award of alimony. (Sections 46b-81 and 46b-82 of the Connecticut General Statutes)
In assigning assets under § 46-81, our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988), in which our Appellate Court stated as follows:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities. See also Watson v. Watson, 221 Conn. 698, 712 (1992).
In determining a fair alimony award, the court shall consider all the statutory criteria in § 46b-82, the alimony statute. The needs of CT Page 9576 the parties is a primary consideration.
 In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial needs of the parties are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Weiman v. Weiman, 188 Conn. 232, 234
(1982).
In this case, the court must also consider the statutory criteria for child support set forth in § 46b-84(c). It shall establish the award for the three minor children whose ages are 8, 6 and 4 in accordance with the child support guidelines in § 46b-215 of the Connecticut General Statutes. The child support orders and the alimony orders are generally based on the net available income of the parties. Toby v. Toby,165 Conn. 742, 747 (1974). The net income generally consists of the total income a party receives from all sources less reasonable expenses paid to earn it. Sturtevant v. Sturtevant, 146 Conn., 644, 648 (1959). For purposes of § 46b-81, § 46b-82, §46b-84 and § 46b-215, for a party who is self-employed as the husband is in this case, the net income earned is the gross amount of salary, wages or commissions less all deduction for federal and state taxes, F.I.C.A., taxes and health insurance as well as reasonable expenses and costs of doing business.
The court has considered the financial affidavits and the respective claims for relief for both parties, as well as all the testimony and all the exhibits introduced in evidence.
From the wife's financial affidavit, the court finds the wife's net monthly income of $1763.19. Her net earnings are determined from the W-2 slips she receives from her employer. She listed her monthly living expenses at $5905.33, or about three times more than her monthly income. Her financial affidavit also lists total assets at $156,490, which includes $10,000 for furniture and household furnishings, $7500 in personal property and $137,262 being held in the escrow account with DeCew Ford, Esq., the net proceeds from the sale of the marital home. There is only $1,728 in her checking account. Her total debts and liabilities total $175,505.
The husband's financial affidavit lists his net income from his business at $738 per week, weekly living expenses of $998 and no assets. His debts and liabilities total $175,505.64. CT Page 9577
The wife contested the husband's net weekly income of $738 per week and introduced evidence that his business paid additional personal expenses and benefits to him. She had worked for him from 1986 to 1992 and testified that the business paid many of his personal expenses and benefits. This court finds that between January 1 to June 15, 1995, the husband drew $22,350 in salary and received $6,650 in benefits for a total gross income of about $29,000 during this 24 week period, or about $1206 per week, or approximately $62,000 annually. The federal, state and FICA taxes and other statutory deductions are approximately $15,000, which leaves him a net annual income of $47,000 or about $900 a week instead of the $738 he claims.
The court has also considered all of the criteria of §§ 46b-81,46b-82, 46b-62, 46b-84 and46b-215 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr,183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Based on the foregoing, the court issues the following orders:
1. CHILD SUPPORT:
 The husband shall pay to the wife child support of $315 a week for the three minor children in accordance with the child support guidelines. See § 46b-215a of the Connecticut General Statutes. As each child reaches the age of majority, this award will be reduced by $105. A signed stipulation dated June 21, 1995 relating to custody and visitation is attached to this decision and shall be binding on the parties and made a part of the court's judgment.
2. ALIMONY:
 The husband shall pay to the wife periodic alimony of $285 per week until the death of either party, the wife's remarriage or statutory cohabitation pursuant to § 46b-86(c) of the General Statutes, but in no event later than July 1, 2000. Either party may move to modify the alimony and child support awards upon proof of a substantial change in circumstances pursuant to § 46b-84 of the Connecticut General Statutes. CT Page 9578 The parties shall exchange federal income tax returns by May 1st of each year for so long as there is an obligation to pay alimony and/or child support.
3. ESCROW FUNDS FROM SALE OF MARITAL HOME:
 The entire escrow fund of $137,272 shall be distributed solely to the wife as lump sum alimony pursuant to § 46b-82 of the Connecticut General Statutes. These funds come from the recent sale of the marital home located at 4 James Court, Weston, Connecticut. There is a possible capital gains liability of $60,000 as a result of this sale. In the event a capital gains tax is assessed against the parties, the husband and wife shall be equally liable for such capital gains tax. The wife and the three minor children will need these funds to find adequate housing, as well as meeting other living expenses for food, education, transportation, insurance, which expenses are presently about $5,905 a month. The minor children attend public school in Weston, Connecticut, and the wife plans to remain in this school district because of the high quality education provided there. The wife testified she will need these funds to buy a home for herself and the three children and the cost of housing is high in Fairfield County. This lump sum alimony award is in addition to the periodic alimony award previously ordered to the wife.
4. TUCKER GROUP:
 The husband shall retain his fifty (50) per cent interest in the Tucker Group, free from any claim by the wife.
5. ARREARAGES:
 The husband owes the wife an arrearage of approximately $800 for child support and alimony pendente lite. The court excuses the husband from any arrearage as it has considered the same in granting the lump sum alimony award to the wife.
6. MEDICAL INSURANCE:
 The husband shall cooperate with the wife and enable her to continue coverage under his existing medical, dental and hospitalization insurance. The wife shall pay all premiums incident thereto. The husband shall provide medical, dental and hospitalization insurance for the minor children and shall pay all premiums incident thereto so long as he has a duty to support the CT Page 9579 children. The parties shall equally share and pay all unreimbursed medical, dental, hospital, pharmacy, psychiatric, and nursing care expenses of the children so long as the husband has a duty to support them. If the wife pays such expenses, the husband shall reimburse her for his share within seven (7) days of receiving proof of said payment.
6. LIFE INSURANCE:
 The husband shall name the wife and minor children as equal beneficiaries on any life insurance policy the he has presently in effect, which designation shall continue so long as the husband has an obligation to pay alimony and/or child support.
7. INCOME TAX AND DEBT INDEMNIFICATION:
 The husband shall indemnify and hold the wife harmless from any obligation or liability she shall ever have by reason of having filed joint federal or state income tax returns with the husband except the possible capital gain on the sale of the Weston, Connecticut marital home. For income tax exemption purposes, the wife shall claim the youngest child and the husband shall claim the two older children as dependents.
8. PERSONAL PROPERTY:
 The wife shall retain all bank accounts presently in her name as well as ownership of the car currently in her name. The husband shall retain all bank accounts presently in his name as well as his interest in the Tucker Group. Each party shall retain the furniture, furnishings and possessions presently within his or her home.
9. LEGAL FEES:
Each party shall be liable for his or her own attorney's fees.
10. OUTSTANDING DEBTS:
 Each party shall be responsible for the liabilities listed on his or her own financial affidavit and shall indemnify and hold the other harmless from any liability resulting therefrom.
11. PARENTAL OBLIGATIONS:
CT Page 9580
 The parties received $35,000 from each of their parents in order to avoid a foreclosure of the marital home and to pay some of their living expenses. This court finds these sums to be gifts and shall not impose any legal obligation on the parties to repay them. However, the parties may have a moral obligation to repay their respective parents.
ROMEO G. PETRONI, JUDGE