## Margot W. Buckley *v.* Paul Buckley

O'Sullivan, C. J., Baldwin, Wynne, Daly and King, Js.

Argued May 7—decided June 5, 1957

*Samuel Reich,* for the appellant (defendant).

*Arthur Levy, Jr.,* with whom, on the brief, was *Samuel E. Friedman,* for the appellee (plaintiff).

KING, J. The defendant and the plaintiff, at the time of the transactions forming the subject matter of this action, were husband and wife, although they have since been divorced. The complaint was in three counts. The defendant filed a counterclaim. The plaintiff recovered on each count of the complaint and the defendant on the counterclaim. This appeal attacks the judgment on only the first and second counts of the complaint. The cross appeal of the plaintiff has been withdrawn.

After a partial trial, the complaint was amended by filing a substituted first count, and to this an amended answer was filed. Recovery was sought of the balance of an original indebtedness of $270,000, claimed to amount, exclusive of interest, to $195,000. On this count the plaintiff had judgment of $249,299, and the defendant claims error only in the computation of interest.

The defendant does not attack any of the subordinate facts in the finding applicable to the first count. Those essential to an understanding of the question involved follow: In the latter part of 1950 and the early part of 1951, the defendant was an officer and stockholder of Link Radio Company, hereinafter referred to as Link Radio, which was then in need of funds. During this period he discussed with the plaintiff the advisability of her selling 35,000 shares of stock which she owned in Barium Steel Corporation, hereinafter referred to as Barium Steel, and lending him the proceeds of the sale so that he could use $100,000 to pay a debt owed by him to Modern Industrial Bank and loan $170,000 to Link Radio. No agreement had been reached, nor had the plaintiff authorized any sale, when she discovered, on January 20, 1951, that the defendant had ordered the sale of the entire 35,000 shares of her Barium Steel stock. The next day the parties met with Maurice Feldman, the defendant's attorney. He told the plaintiff that if she did not execute powers of attorney necessary for the transfer of the stock by delivery, the defendant would be in very serious trouble. The plaintiff signed the powers of attorney necessary to permit the defendant to make a good delivery of the stock, and he received $270,000 from its sale.

At the plaintiff's insistence, Feldman prepared,

and the defendant executed, an agreement which the plaintiff accepted. Dated January 21, 1951, it provided that the $270,000 was to be repaid to the plaintiff within two years with interest at 4 per cent and that the defendant, as security, would pledge, by depositing with a copy of the agreement in a joint safe deposit box at the Marine Midland Trust Company in New York City, (1) 35,000 shares of stock of Federal Machine and Welder Company, indorsed in blank, and (2) a note of Link Radio in the amount of $170,000, payable to the order of the defendant two years from date, to be by him indorsed in blank. The plaintiff was not represented by counsel at the time the agreement was executed and did not show it to Irwin Miness, her attorney, for about a month. At Miness' insistence a letter, dated May 17, 1951, was signed by both parties and sent to the Marine Midland bank. Its basic effect was threefold. In the first place, the maturity of the loan was changed from January 21, 1953, so as to provide for repayment in two instalments, the first, of $75,000, by March 15, 1952, and the balance, of $195,000, by January 21, 1953. Secondly, the Marine Midland bank was constituted an escrow agent as to the Federal Machine and Welder stock. Thirdly, the defendant agreed that he would deliver to the escrow agent, within 180 days from May 17, 1951, the promissory note of Link Radio, dated January 22, 1951, and that if he failed to do so, the escrow agent would, upon written demand by the plaintiff, deliver to her the Federal Machine and Welder stock. On June 19, 1951, the defendant sent the plaintiff a letter confirming the original agreement as modified by the letter of May 17, 1951.

The defendant failed to deposit the Link Radio note, and upon proper demand the stock was de-

livered by the Marine Midland bank to the plaintiff on November 15, 1951. This appeal does not call in question the holding of the court that the stock was in effect a pledge and that the plaintiff, after its receipt, owed the defendant the duties of a pledgee. The plaintiff received, to be applied on the loan, payments aggregating $6100 between May, 1951, and August, 1952. The $75,000 instalment due March 15, 1952, was not paid until August 14, 1952. This action was not brought until after January 21, 1953, the date when the final instalment became due. The court concluded that the loan became in default on November 15, 1951, the terminal date of the period of 180 days within which the defendant was to deliver the Link Radio note, and that the plaintiff was entitled to recover interest from that date on the unpaid indebtedness, at 6 per cent.

The defendant claims that the provision as to the Link Radio note was solely a security provision and that the failure to deliver the note, while a breach of the agreement in so far as it dealt with security, was not a default in the loan itself. Upon this the defendant bases his fundamental claim that no default occurred in the loan until March 15, 1952, the due date of the first instalment of $75,000; that this default was cured by the acceptance of the belated payment of $75,000 in August; and that thereafter no default occurred until the due date of the final instalment of $195,000 on January 21, 1953.

The first count of the complaint, as amended, alleged that the failure to deposit the Link Radio note constituted a default as of November 15, 1951; that the $75,000 payment on August 14, 1952, was a credit to be applied on the loan; and that the defendant "still owes the plaintiff . . . $195,000 . . . plus interest on the principal amount from January 21,

1951." Nowhere are there any allegations appropriate to, or which give any hint of, a claim that the loan would, prior to the date of final maturity, bear interest at any rate above that stated in the agreement or that damages are sought for any breach of contract other than the failure to pay the debt, with interest. For this reason no damages should have been allowed for the breach of the agreement to deposit the Link Radio note and the breach of the agreement to pay the first instalment of $75,000 on March 15, 1952, even though under proper pleadings at least nominal damages would have been recoverable for each. *Excelsior Needle Co.* v. *Smith,* 61 Conn. 56, 65, 23 A. 693. It follows that interest under the first count should have been computed at the stated rate of 4 per cent on the unpaid balance of the debt up to the date of final maturity, and only thereafter at 6 per cent under the provisions of General Statutes § 6778. Accordingly, the judgment must be corrected by the computation of interest in conformity with this opinion.

In the second count the plaintiff sought damages for the failure to return 7000 shares of stock in Barium Steel, loaned to the defendant in December, 1946, and January, 1947, under an oral agreement to repay. Although the defendant has assigned error in the failure to add to the finding certain subordinate facts set forth in the draft finding, there is nothing in the record, nor has the defendant printed any evidence in his appendix, to show that any of these facts were admitted or undisputed. It is immaterial, of course, that testimony as to any of them was uncontradicted. Maltbie, Conn. App. Proc. (2d Ed.) § 158. None of the additions sought can be made, with one exception which will be noted below.

The other assignments of error in connection with the second count raise two basic claims, both of which are predicated on the final paragraph of the agreement of January 21, 1951, executed by the defendant. It reads: "I also agree that when and if I receive Barium Steel Corp., stock from Barium Steel Corp., or any other person or for compensation for services to Barium Steel Corp., I will deliver to you [the plaintiff], without cost to you, the 7,000 shares of Barium Steel Corp., common stock which I owe you." The plaintiff concedes in her brief that the defendant did not, after the execution of the agreement, receive any Barium Steel stock. That fact is therefore added to the finding. The first claim of the defendant is that the effect of the language of the agreement was to transmute the plaintiff's prior absolute right to a return of the stock orally loaned into a right conditional on the defendant's acquisition of Barium Steel stock from one or more of the enumerated sources. A proper construction of the language quoted is concerned with the intention of the parties as expressed in the writing, as distinguished from any actual intention they may have had as a state of mind. The expressed intention of the parties to a contract is to be determined from the language used, interpreted in the light of the situation of the parties and the circumstances connected with the transaction. *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427. Literally construed, the language of the agreement would provide that if the defendant received even one share of Barium Steel stock from any of the enumerated sources his obligation to redeliver the entire 7000 shares would forthwith arise. The surrounding circumstances, and especially the fact that the defendant owned no Barium Steel stock at the time of the execution of

the agreement and the writing of the letter which modified it—documents which themselves indicate that the parties were uncertain whether he would ever acquire any, or, if he did, how much—preclude such a construction. Besides, such a qualified right to a return of stock loaned as is claimed by the defendant is utterly inconsistent with the unequivocal language "which I owe you." The only reasonable construction of which the language is susceptible is that the defendant agreed, as an addition to his oral agreement to repay, that in the event that at any time or times after the execution of the agreement of January 21, 1951, he received Barium Steel stock from any of the enumerated sources he would deliver it to the plaintiff to apply on the 7000 shares which he owed her. This was a provision to expedite repayment under the stated conditions, not to make repayment less likely. The court was correct in holding that the original oral agreement to repay the plaintiff the 7000 shares was not superseded, limited or curtailed, but on the contrary was enlarged and made more certain of fulfilment, by the additional undertaking for repayment in kind contained in the agreement of January 21, 1951. *Jarvis* v. *Cunliffe,* 140 Conn. 297, 299, 99 A.2d 126.

The second basic claim, and that most seriously pressed in the defendant's brief, is that the court erred in finding that the plaintiff had proven that if the Statute of Limitations had run on this cause of action, it had been revived by the promise in the agreement of January 21, 1951. The unattacked finding of the court was that the duty to return the stock did not arise until demand and that there was no demand until the institution of the present action on May 11, 1953. The memorandum of decision states that the Statute of Limitations had run unless

the cause of action was revived by the execution of the agreement. The cause was tried on a contract theory of assumpsit, and to this the defendant pleaded a six-year Statute of Limitations. General Statutes § 8315. The plaintiff, in a reply, besides denying that the Statute of Limitations had run, pleaded that if it had, the cause of action had been revived by the promise contained in the agreement of January 21, 1951. The court's conclusion as to this second count was in conformity with the plaintiff's latter claim. The defendant's claim is substantially that previously discussed, that the promise to repay the stock was conditional on his thereafter receiving Barium Steel stock and that since he had received none the promise was not sufficient to remove the bar of the Statute of Limitations.

The defendant correctly claims that to remove the bar of the Statute of Limitations there must be a promise to pay the indebtedness. From an unequivocal acknowledgment of the indebtedness the law will imply an unconditional promise to pay, in the absence of language inconsistent with such an implication. *Radigan* v. *Hughes,* 84 Conn. 137, 141, 79 A. 50; *Norton* v. *Shepard,* 48 Conn. 141, 142. It was on this basis that an unequivocal acknowledgment of indebtedness was held adequate in the two cases relied upon by the trial court—*Sears* v. *Howe,* 80 Conn. 414, 417, 68 A. 983; and *Wells* v. *Carson,* 140 Conn. 474, 476, 101 A.2d 297. It is true that an unconditional promise to pay will not be implied if the acknowledgment of indebtedness, even though unequivocal, is accompanied by a conditional promise to pay. *Dwyer* v. *Harris,* 128 Conn. 397, 400, 23 A.2d 147. In such a situation the indebtedness remains barred by the statute until the condition has been met. *Potter* v. *Prudential Ins. Co.,* 108 Conn.

271, 281, 142 A. 891. Here the acknowledgment of indebtedness was unequivocal, and, as has been pointed out, there was no change in the original unlimited oral promise to pay back the stock. The unequivocal acknowledgment of indebtedness, on the one hand, and the collateral and additional promise to deliver to the plaintiff whatever Barium Steel stock he might thereafter receive were separate and distinct undertakings. That the defendant has not received any Barium Steel stock absolves him from the duty of delivery under the additional promise but in no way limits the unequivocal promise to pay which the law implies from his unequivocal acknowledgment that he owed the plaintiff 7000 shares of Barium Steel stock. The bar of the Statute of Limitations was removed, and the court correctly so held.

There is error in part, the judgment is affirmed except as regards the first count of the complaint and as to that count only the judgment is set aside and the case is remanded for the rendition of judgment for the plaintiff in accordance with this opinion.

In this opinion the other judges concurred.