HYDRO-HERCULES CORPORATION *v.* GARY EXCAVATING, INC., ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

---

Argued May 9—decision released July 23, 1974

*Howard F. Zoarski,* for the appellants (defendants).

*Rolland Castleman,* with whom was *Jules A. Karp,* for the appellee (plaintiff).

BOGDANSKI, J. The plaintiff, a subcontractor, brought this action to recover damages for the breach of an express contract against the defendant Gary Excavating, Inc., hereinafter Gary, the general contractor for the construction of a sewage system for the town of North Haven. The case was referred to *Hon. John R. Thim*, state referee, who, exercising the powers of the Superior Court, rendered judgment for the plaintiff. The defendants have appealed from that judgment.

The defendants have assigned error in the referee's finding of facts without evidence; in his rulings on evidence; in his overruling of their claims of law; and in his conclusions.

The finding[1] discloses the following pertinent facts: The plaintiff was engaged in the deep-well dewatering business and, in conjunction therewith, sold and rented pumps and associated equipment. In the summer of 1966, the defendant Gary began to prepare its bids to obtain contracts for the installation of sanitary sewers in the town of North Haven. Initially the town of North Haven had divided the sewer project into two segments and contractors were invited to bid on either or both, designated as contracts 100-8 and 100-9. The proposed project called for the sewer pipe to be laid in dry trenches, requiring dewatering of the area. Following discussions with Gary, the plaintiff pre-

---

[1] A finding of material fact may be attacked as not supported by the evidence. The validity of such a claim is tested by the evidence printed in the appendices to the brief. Practice Book § 718; *Klein v. Chatfield*, 166 Conn. 76, 77 n.1, 347 A.2d 58. An examination of the plaintiff's printed appendix discloses that fifteen of the sixteen challenged findings are reasonably supported by the evidence. The remaining challenged finding relates to the issue of damages and is considered in the body of this opinion.

pared a proposal for the predewatering of the project area, the cost of which was to be incorporated by Gary in its bids. Upon the acceptance of the plaintiff's proposal by Gary, the parties entered into a subcontract agreement dated April 18, 1967, with an addendum dated May 3, 1967.[2] Thereafter Gary submitted its bids for proposed contracts 100-8 and 100-9.

The town of North Haven did not accept any of the submitted bids. Instead it modified the sewer project by redesignating some of the streets on which sewers were to be installed, combined the previously proposed contracts into a single contract, labeled it 100-9 and invited bids. Gary's bid on the new contract 100-9 was accepted by the town.

Gary did not enter into a new subcontract with the plaintiff. Both parties understood that their

---

[2] "GARY EXCAVATING, INC.
GENERAL BUILDING CONTRACTORS
1155 Main Street, Branford, Conn.

Date April 18, 1967

SUBCONTRACT AGREEMENT

WITH Hydro-Hercules Corporation
Box 399 RD-2 South Road
Bolton, Connecticut 06040

Sanitary Sewers
NAME OF JOB Contracts 100-8 & 100-9
LOCATION North Haven, Connecticut

Subject to the approval of the Engineer and Owner this will be your authority to furnish all labor, equipment and materials (other than gravel) for the installation of wells as required for Contracts 100-8 and 100-9 for the Town of North Haven, Connecticut, at the price of $7.50 per foot. (vertical)

Additional wells required at less than 200 feet spacing will be at the cost of $7.00 per vertical foot.

Pumps will be furnished as required on a rental option basis by Hydro-Hercules. 90% of rental to be applied toward cost of equip-

rights and obligations were governed by the terms of the subcontract of April 18, 1967, and the addendum. From June 6, 1967, to November 7, 1967, the plaintiff performed well-drilling operations and rented pumps and equipment to Gary pursuant to the terms of the subcontract and addendum. The plaintiff rendered monthly bills in accordance with the charges fixed in the subcontract for wells drilled and equipment rented. Gary never disputed the accuracy or reasonableness of those bills, and made three partial payments thereon. When Gary failed to make further payments, the plaintiff terminated its operations and removed its equipment from the sewer project site.

ment if Hydro-Hercules is notified of our intent to purchase within 60 days. Equipment purchased and rental to be on Hydro-Hercules list price, less 15%, on sale price.

Scheduling of progress is to be determined by our Engineer and will not require any more than three (3) moves by Hydro-Hercules.

Water required for drilling will be furnished by General Contractor.

Monthly payments for work in place. Progress to be in keeping with requirements of General Contractor.

| Accepted by: | Accepted by: |
|---|---|
| Russell T. Moonan, Pres. | Vincent Giordano, Treas. |
| Hydro-Hercules | Gary Excavating, Inc." |

"FROM HYDRO HERCULES

Re: Sanitary Sewers
Contracts 100-8 & 100-9

Addendum to Subcontract Agreement dated April 18, 1967.

General Contractor will determine well locations and depth, however, this should be in keeping with the Sub-Contractor's progress so as not to cause delays to the Subcontractor.

. . . . .

Approved
Vincent Giordano
5/3/67"

After the plaintiff commenced this action, the defendants filed two affirmative defenses and a counterclaim, which, among other things, alleged that the plaintiff failed to perform according to the terms of the subcontract agreement and therefore breached its agreement with Gary. The counterclaim specifically alleged the existence of the subcontract agreement of April 18, 1967.

The referee reached the following conclusions: (1) the plaintiff brought the proper cause of action in seeking recovery on the subcontract; (2) the plaintiff fully performed its contractual obligations; (3) the plaintiff was justified in terminating its subcontract with Gary; and (4) the defendants failed to establish the allegations of their special defenses and counterclaim. Judgment was entered for the plaintiff in the amount of $60,000.

Gary's principal claim is that the referee erred in concluding that the plaintiff had brought the proper cause of action. Gary argues that the subcontract of April 18, 1967, relates by its terms to contract proposals 100-8 and 100-9 only, and that when those contracts were not subsequently awarded to Gary, the subcontract became unenforceable and void. Although Gary concedes that the plaintiff performed work on the sewer project, it maintains that the work was not done under contracts 100-8 and 100-9.

"The intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were. *Nutmeg State Machine[ry] Corporation* v. *Shuford,* 129 Conn. 659, 661, 30 A.2d 911. This determination requires a finding of mutuality of obliga-

tion." *Hess* v. *Dumouchel Paper Co.,* 154 Conn. 343, 347, 225 A.2d 797. Intention is an inference of fact, and the conclusion is not reviewable unless it was one which the trier could not reasonably make. *Bianco* v. *Darien,* 157 Conn. 548, 557, 254 A.2d 898; *Grote* v. *A. C. Hine Co.,* 148 Conn. 283, 286–87, 170 A.2d 138.

The inclusion of a reference to contracts 100-8 and 100-9 in the subcontract did not automatically cause its termination when the contract subsequently awarded Gary was labeled 100-9. The subcontract required the plaintiff to drill wells and rent equipment when and where Gary directed. The parties agreed to a specific price per vertical foot drilled and to a specific schedule of rental rates for equipment leased. There was no need to consult contracts 100-8 and 100-9 for detailed plans and specifications since the mutual obligations of the parties were contained within the four corners of the subcontract and its addendum. The written words of the parties did not manifest any intent to abandon their subcontract merely because the sewer project was modified and combined under the single label 100-9. This is not a case, as claimed by Gary, in which "substantial changes" were subsequently made to incomplete documents incorporated into the contract by reference, as in *Randolph Construction Co.* v. *Kings East Corporation,* 165 Conn. 269, 275, 334 A.2d 464.

The subsequent acts of the parties are also evidence of their intent. When the plaintiff began work on the sewer project, it did so under the direction of Gary. The plaintiff performed according to the terms of the subcontract and rendered monthly bills thereunder. Gary accepted those bills without

objection and made partial payments. Moreover, the defendants' pleadings alleged the existence of the subcontract agreement of April 18, 1967. Those pleadings are inconsistent with their present claim and could properly be considered by the trier on the question of intent. See *Haaser* v. *A. C. Lehmann Co.,* 130 Conn. 219, 222, 33 A.2d 135. Gary's treasurer, Vincent Giordano, summed it up when he was asked on direct examination, "Did you draw a new contract with Hydro-Hercules?" He answered, "I don't believe we did. I think we just went along on that one [the subcontract of April 18]."

The conclusions reached by the trial court are tested by the finding and must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Klein* v. *Chatfield,* 166 Conn. 76, 80, 347 A.2d 58. The referee's finding that "the parties understood that the relationship between them was governed by plaintiff's Exhibits G and H [Subcontract of April 18, 1967, and addendum of May 3, 1967]" is amply supported by the subordinate facts, and is more than sufficient to support the conclusion that the parties entered into a valid and enforceable subcontract.

The referee correctly rejected Gary's contention that recovery could be had only on an implied contract or in quantum meruit. Since Gary contracted for performance at an agreed unit price and at an agreed rental for equipment leased, the plaintiff was not required to prove the reasonable value of its services. Where the plaintiff performs according to the contract, he is entitled to recover the

unpaid contract price. *Strimiska* v. *Yates,* 158 Conn. 179, 187, 257 A.2d 814; 11 Williston, Contracts (3d Rev. Ed.) § 1363.

The defendants have assigned error in the finding by the referee that "[t]he total fair and reasonable charges for repairs to leased equipment because of negligence was $2,983.64." The defendants claim that "there was a total absence of any evidence to justify a finding that the alleged repairs resulted from negligence." This assignment of error has merit. We find no evidence in the appendix to the plaintiff's brief which would support a finding that the alleged repairs were necessitated by Gary's negligence. Moreover, there is no claim in the complaint for the cost of repairs to leased equipment damaged by negligence. The referee erred in making this finding and award.

The final assignment of error relating to rulings on evidence has been considered and found to lack merit.

There is error only in the amount of damages; the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified in accordance with this opinion.

In this opinion the other judges concurred.