[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties to this action were divorced on December 27, 1983 (Alexander, State Trial Referee). There are two children, issue of the marriage, one of whom is now emancipated. The youngest is now sixteen years old. By the terms of the original decree, the defendant, inter alia, was ordered to pay unallocated alimony and child support and also ordered to provide health insurance for the children as available through his employment. The parties also were to share equally all the minor children's uninsured unreimbursed medical expenses.
In September of 1992, the plaintiff applied for Title IV-D support enforcement services pursuant to Conn. Gen. Stat. Section 17-578(h) and the Office of Child Support Enforcement assisted her in filing a contempt application dated September 10, 1992. The defendant was served with the application and summoned to appear before the family support magistrate division of this court on November 18, 1992.
The plaintiff is alleging that the defendant has failed to comply with his court-ordered alimony, support and medical expense obligations. The defendant has filed a Motion For Contempt dated November 17, 1992 alleging that the plaintiff has failed to pay any share of a medical deductible since the date of the divorce and has thus violated that portion of the judgment which requires her to pay one-half of all the children's medical expenses.
At the November 18, 1992 hearing, scheduled on a typically congested Wednesday contempt calendar, it become immediately apparent that hearing the issues involved in this contempt proceeding would take several hours, so the matter was specially CT Page 13-B assigned a contested hearing date of January 14, 1993. Between November 18 and that date, this court ordered the defendant to pay $60.00 per week as temporary support, because he represented that $60.00 was the existing order, although the plaintiff disputed this. Unfortunately, the court file was missing then and is still missing, despite staff efforts to locate it.
On the January 14 hearing date, both parties appeared and a contested hearing was held. The plaintiff appeared pro se and the defendant was represented by counsel. Prior to the commencement of the hearing, this magistrate explained to the parties that the file could not be located and, after some discussion, it was agreed that the hearing could proceed and that the court would utilize available copies of the original decree and relevant post-dissolution motions and orders.
Before the court can determine the plaintiff's allegation that the defendant is in contempt for failing to pay his weekly monetary obligation, the parties' issue of just what that weekly obligation is must be resolved. Unfortunately, the parties' interpretations of two post-dissolution modifications, one dated May 2, 1984 and the other dated March 4, 1987, differ. The parties do not agree on what was meant by the terms of two stipulated agreements presented to the court on those two dates and entered as orders.
The original judgment, at page 2, ordered the defendant to pay "unallocated alimony and support in the sum of $185.00." The May 2, 1984 modification order, effective May 6, 1984, in paragraph 2, states, "Unallocated alimony and support shall be modified from $185.00 per week to $155.00 per week, and upon the death or remarriage of the plaintiff, shall be modified to payment of child support for the older child, Jamie, in the amount of $50.00 per week and payment of child support for the younger child, Randy, in the amount of $75.00 per week. Child support shall terminate at the age of majority of each child." (emphasis added)
On March 4, 1987, the court, (Satter, J.) ordered, again by agreement, that "unallocated alimony and support shall be reduced from $155.00 per week to $120.00 per week for a period of three (3) months from today. Thereafter, the payment shall increase to $125.00 per week." At the end of this 1987 order also appears the words, "In all other respects the judgment as modified on May 2, 1984 shall remain in full force and effect." CT Page 13-C
This court heard testimony and argument from both sides on the issue of what sums should have been paid and what sums were actually paid.
Both parties had preserved good, contemporaneous records of the defendant's payments and both had previously attended an audit conducted and summarized by the testimony of Mr. Rivera, the Support Enforcement Officer, (See Petitioner's Exhibit B). It was therefore determined and agreed that since the date of the last court order, March 4, 1987, through January 14, 1993, the defendant has verified total payments of $32,870.00.[1]
What should have been paid by the terms of the two modifications was vigorously contested.
On May 6, 1984 and on March 4, 1987 stipulations were presented in writing to the court as proposed orders modifying the terms of the dissolution judgment. The parties both signed these proposed orders, as did their respective attorneys. On both dates, a judgment modifying the dissolution decree was entered by the court after acceptance and approval of the written agreement.
The question of the interpretation of an agreement is a question of fact for the trier. Buichetto v. Haggquist, 17 Conn. App. 544,548, A.2d (1989); Lavigne v. Lavigne, 3 Conn. App. 423,427, 488 A.2d 1290 (1985); Greene v. Scott, 3 Conn. App. 34, 38,484 A.2d 474 (1984).
It is axiomatic that, in general, interpretation of an agreement is a search for the intent of the parties. "The intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were." Hydro-Hercules Corp. v. Gary Excavating, Inc., 166 Conn. 647, 652-653, 353 A.2d 714 (1974); Lavigne v. Lavigne, supra, 428. A trial court can reach its determination on the basis of the written agreement, supplemented by "the testimony of live witnesses as to the meaning of the document or as to the circumstances surrounding its execution. Marion Road Assn. v. Harlow, 1 Conn. App. 329, 332, 472 A.2d 785 (1984); Lavigne v. Lavigne, supra, 428.
In the instance case, the parties testified and argued their conflicting interpretations of the 1984 and 1987 modifications. There were no other witnesses called to testify or any other CT Page 13-D evidence presented on the meaning or the circumstances surrounding the execution of the two agreements adopted as orders. There was no transcript produced of either the 1984 or 1987 proceeding.
In view of the lack of additional evidence, the stipulations themselves, which were signed by the parties and their counsel are controlling, and they must be construed according to the intention of the parties as expressed in the language used in the documents themselves, rather than according to the intention which may have existed in the mind of either of the parties. Sturtevant v. Strutevant, 146 Conn. 644, 647-648, 153 A.2d 825
(1959); Buckley v. Buckley, 144 Conn. 403, 409, 133 A.2d 604
(1957); Foley v. Foley, 149 Conn. 469, 472, 181 A.2d 607 (1962). The words the parties employed must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract." Cocco v. Cocco, 166 Conn. 37,41 347 A.2d 72 (1974); Beach v. Beach, 141 Conn. 583, 588-589,107 A.2d 629 (1954).
The defendant's interpretation of the 1984 modification ignores common meaning and usage and is nonsensical. He argues that the unallocated alimony and support order of $155.00 was never such — it was really intended to be an allocated order of child support — $50.00 for Jamie and $75.00 weekly for Randy — a total of only $125.00, not $155.00. He claims the 1987 order, which refers to $125.00 per week in unallocated alimony and child support, is really an allocated order of child support.
The defendant asks the court to ignore the express conditions precedent in the 1984 order — "upon the death or remarriage of the plaintiff" — only after the occurrence of which the unallocated alimony and support order would be modified to a $50.00/$75.00 allocated child support order. These same conditions precedent were again incorporated into the 1987 modification and were unchanged. Neither of the two events — death or remarriage — has occurred. If the defendant intended the unallocated alimony and support to be reduce when the eldest child reached eighteen, that intent surely would have been expressed in a more clear and straightforward manner.
The defendant's weekly obligation is clearly and unequivocally $125.00 per week unallocated alimony and support. This plaintiff's interpretation is correct. CT Page 13-E
During the course of the hearing, the parties and the court calculated and agreed what the defendant's arrearage would be under either alternative — the plaintiff's or the defendant's interpretation. Accordingly, the defendant owes the plaintiff an arrearage of $5,045.00 in unallocated support and alimony as of January 14, 1993.
The defendant is ordered to immediately resume paying $125.00 per week unallocated alimony and child support. He may pay bi-weekly, by agreement, since he is paid in that manner. The temporary order of $60.00 is vacated, effective January 14, 1993. His weekly payment is to be secured by an immediate wage withholding, subject to a thirty-day stay.
Since the defendant's failure to pay the full order has been based on an honest misinterpretation of the modifications, he is not found in contempt. However, he has sufficient cash on hand — $11,000.00 in savings accounts — to pay the plaintiff her arrearage in full, and he is ordered to do so through the Office of Support Enforcement on or before March 1, 1993.
This case is continued to March 11, 1993 at 10:00 A.M. for further hearing to determine medical expenses allegedly owed and payment thereon, and to monitor the defendant's compliance with the lump sum order.
CHRISTINE E. KELLER FAMILY SUPPORT MAGISTRATE