[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR PREJUDGMENT REMEDY
The plaintiff, DSP Software Engineering, Inc., is a Massachusetts corporation, with a principal place of business in Massachusetts. On December 22, 1999, the plaintiff filed a prejudgment remedy application requesting an attachment on the personal property of the defendant, wherever located in the state of Connecticut. The plaintiff attached an affidavit by Joseph Della Morte, president of DSP Software Engineering, Inc., attesting that the defendant, NCT Group, Inc., now or formerly known as Noise Cancellation Technologies, engaged the plaintiff to perform certain consulting services, and that this engagement required that the plaintiff "port" the defendant's Clearspeech software to a "C54X platform." Della Morte's affidavit attests that the plaintiff performed all its required services between approximately March 1, 1998 and November 23, 1998. The affidavit further attests that on November 24, 1998, the defendant issued a purchase order; (Plaintiff's Exhibit 1); to CT Page 10537 the plaintiff in the sum of $60,000. According to Della Morte's affidavit, on November 25, 1998 the plaintiff issued an invoice; (Plaintiff's Exhibit 2); to the defendant in the sum of $60,000.
The plaintiff's complaint, attached to its prejudgment remedy, sounds in common law breach of contract. The plaintiff alleges that despite demand, the defendant has failed, refused and neglected to pay the plaintiff the sum of $60,000. The prejudgment remedy application and complaint were served on the defendant on January 14, 2000. The plaintiff also attached a motion to disclose property.
On January 24, 2000, the court granted the plaintiff's prejudgment remedy application and the motion to disclose property. The court ordered an attachment in the amount of $70,000 on the defendant's inventory, goods, equipment, cash and personalty. The court also ordered a garnishment of the defendant's accounts receivable. The defendant did not appear for the January 24, 2000 hearing.
On February 1, 2000 the defendant filed a motion to vacate the orders granting the prejudgment remedy and the disclosure of assets. In its motion, the defendant stated that it had valid defenses to the plaintiff's claim, including, but not limited to, failure of consideration, nonperformance by the plaintiff, and delivery of defective and/or nonconforming product by the plaintiff. The court indicated to the plaintiff that it would vacate the order so that the defendant might be fully heard if good reason for its absence was provided. The court was satisfied that the defendant had good reason for not appearing for the January 24, 2000 hearing and vacated its January 24, 2000 prejudgment order.
On March 20, 2000, the court held a second hearing on the plaintiff's prejudgment remedy application. Both the plaintiff and the defendant were present at this hearing.
On March 27, 2000, the parties filed posthearing briefs outlining their respective positions. On July 24, 2000 the court continued its prejudgment hearing on the limited issue of whether the plaintiff has corporate capacity to sustain an action in Connecticut pursuant to §33-920.[1]
The plaintiff argues that it is entitled to a prejudgment remedy attachment in the amount of $70,000 because it can establish that there is probable cause that judgment will be rendered in its favor in a trial on the merits. The plaintiff argues that the defendant has failed to pay for services rendered by the plaintiff. The plaintiff contends that it was hired by the defendant to convert the defendant's software, CT Page 10538 Clearspeech ASF, written by the defendant in a "C" code, to run on a "C54X platform." (Plaintiff's Brief, p. 1.) The plaintiff further contends that the parties agreed that in exchange for the services rendered, the defendant would pay the plaintiff $60,000. (Plaintiff's Brief, p. 2.) On November 24, 1998, and after receipt, of the finished product, the defendant forwarded a purchase order to the plaintiff. The purchase order contained no reference to problems, nor did it indicate a need to perform additional work. (Plaintiff's Brief, p. 2.)
On November 25, 1998, the plaintiff issued an invoice for $60,000 to the defendant. (Plaintiff's Brief, p. 2.) The plaintiff contends that, at this point in the relationship, the defendant did not relay any concerns regarding the adequacy of the services rendered. (Plaintiff's Brief, p. 3.) To date, the $60,000 invoice remains unpaid. (Della Morte Affidavit, p. 2.) One year after the issuance of the invoice, the defendant turned the matter over to its Connecticut counsel.
The defendant, conversely, argues that the plaintiff is not entitled to a prejudgment remedy attachment because the plaintiff has failed to establish probable cause to substantiate the validity of its claim. The defendant contends that it hired the plaintiff to perform two tasks: "to convert the code and to bring it up to spec with the functional specifications delivered in August, 1998." (Transcript of 3/20/00 Hearing, p. 87.) The defendant does not contest the existence of an agreement between it and the plaintiff. The defendant, however, does claim that the plaintiff cannot establish the requisite probable cause because:
1. the plaintiff lacks corporate capacity to maintain this action because the plaintiff does not have a certificate of authority as required under General Statutes § 33-396[2]; and 2. the plaintiff's common law breach of contract claim is barred because the Uniform Commercial Code ("UCC") governs the transaction. Additionally, the defendant argues that under the UCC, the plaintiff breached an express warranty to the buyer defendant in that the plaintiff failed to correct deficiencies in the product, the product was properly rejected under § 42a-2-602 (1) and that the plaintiff breached an implied warranty of merchantability and or fitness for a particular purpose by delivering the "code" with deficiencies in violation of §§ 42a-2-314 and 42a-2-315. (Defendant's post hearing brief in opposition, pp. 3-5.) The defendant also argues that it prepared the purchase order, not because it had accepted the plaintiff's services as rendered, but in response to the plaintiff's request for the same. (Tr., p. 77)
I. PREJUDGMENT REMEDY STANDARD
CT Page 10539
A "prejudgment remedy" means any remedy that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment.Fermont Division v. Smith, 178 Conn. 393, 398, 423 A.2d 80 (1979), quoting General Statutes § 52-278a (d). The purpose of a prejudgment remedy is to preserve the asset while the matter is being litigated.Rosenberg v. Rosenberg, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 356640 (January 5, 1999, Frankel, J.)
Section 52-278d authorizes a trial court to issue a prejudgment attachment upon a determination of probable cause to sustain the validity of the plaintiff's claim. Calfee v. Usman, 224 Conn. 29, 36, 616 A.2d 250
(1992). The trial court must determine, in light of its assessment of the legal issues and the credibility of the witnesses, whether a plaintiff has sustained the burden of showing probable cause to sustain the validity of its claim. Nash v. Weed Duryea Co., 236 Conn. 746, 749,674 A.2d 849 (1996). The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. New England LandCo., Ltd. v. DeMarkey, 213 Conn. 612, 620, 569 A.2d 1098 (1990). Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. Three S. DevelopmentCo. v. Santore, 193 Conn. 174, 175, 474 A.2d 795 (1984). It is not necessary for plaintiff to prove the case by a fair preponderance of the evidence at the probable cause stage. South Mill V. Assn. v. Still HillDevelopment Corp., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 563009 (April 27, 1998, Lavine, J.), citing McCahilll v. Town Country Associates, Ltd., 185 Conn. 37, 39,440 A.2d 801 (1981); Self-Service Sales Corp. v. Heinz, 1 Conn. App. 188,194, 470 A.2d 701 (1984)
The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. Bank of Boston Connecticut v. Schlesinger, 220 Conn. 152, 156,595 A.2d 872 (1991). The court's role in such a hearing is to determine probable success by weighing probabilities. This weighing process applies to both legal and factual issues. Id. In ruling on an application for a prejudgment remedy, "the court is limited to the evidence produced at the hearing." South Mill v. Assn. v. Still Hill Development Corp., supra, Superior Court, Docket No. 563009.
In order to meet his burden of proving probable cause for a breach of CT Page 10540 contract claim, the plaintiff must at least establish the existence of a contract. Macdonald v. Pinto, Superior Court, judicial district of New Britain, Docket No. 479007, (May 14, 1999, Robinson, J.) of course, discovery and a full trial on the merits will provide the plaintiff ample opportunity to develop his claims more fully. Swaim v. Kovacs, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 157759 (May 27, 1998, Lewis, J.)
In the present case, the plaintiff has proven the existence of an agreement between it and the defendant. The testimony from the March 20, 2000 hearing is uncontroverted. Both the plaintiff and the defendant acknowledge the existence of an agreement providing that the plaintiff would perform conversion services in exchange for payment by the defendant. (Tr., pp. 87-88) It is well settled in this state that there must be mutuality of obligation between the parties to a contract for the contract to be enforceable. Sloan v. Kubitsky, 48 Conn. App. 835, 839,712 A.2d 966, cert. granted, 247 Conn. 901, 719 A.2d 904 (1998), appeal dismissed, 248 Conn. 670, 728 A.2d 1095 (1999). Specifically, the intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were. Hydro-Hercules Corp. v. Gary Excavating, Inc., 166 Conn. 647, 652,353 A.2d 714 (1974). This determination requires a finding of mutuality of obligation. Id., 653.
Here, the plaintiff has established probable cause by showing that there was a mutuality of obligation between it and the defendant. The intention of these parties was clearly to bind each other to perform. However, in ruling on a prejudgment remedy, the court must evaluate not only the plaintiff's claim but also any defenses raised by the defendant, since a good defense will be sufficient to show there is no probable cause that judgment will be rendered in favor of the plaintiff.Rosenberg v. Rosenberg, supra, Superior Court, Docket No: 356648, quotingAugeri v. C.F. Wooding Co., 173 Conn. 426, 370 A.2d 538 (1977). See alsoRoberts v. Caton, 224 Conn. 483, 487 n. 4, 619 A.2d 844 (1993)
 II. DEFENSES RAISED BY THE DEFENDANT a. Corporate Capacity
The defendant contends that the plaintiff lacks "standing" to bring this cause of action because the plaintiff is a Massachusetts corporation without a certificate of authority to conduct business in the state of Connecticut. (Defendant's posthearing brief, p. 1.) General Statutes § 33-920 (a) states that a foreign corporation, other than an insurance, surety or indemnity company, may not transact business in this state until it obtains a certificate of authority from the Secretary of CT Page 10541 the State. General Statutes § 33-920 (a). "A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority." General Statutes § 33-921 (a). Whether a corporation is transacting business so as to require a certificate of authority as a prerequisite to maintenance of an action in any court in the state is a question which must be resolved by examining the complete factual circumstances of each case. Peters Production, Inc. v. Dawson,182 Conn. 526, 529, 438 A.2d 747 (1980).
The issue of the plaintiff's corporate capacity is but a voidable defect, waived if not raised by the defendant in a timely manner by way of special defense. Intelisearch Inc. v. Milo, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No: 163353 (December 4, 1998, Karazin, J.), citing Boxed Beef Distributors v. Rexton, Inc.,7 Conn. App. 555, 558, 509 A.2d 1060 (1986). Pursuant to Practice Book § 10-46, if a defendant intends to controvert the capacity of a corporate plaintiff to maintain a suit, the proper procedural vehicle to raise that issue is by way of special defense in his answer. IntelisearchInc. v. Milo supra, Superior Court, Docket No. 163353. The defendant in the present action has properly raised corporate capacity as a defense in its response to the plaintiff's application for prejudgment remedy.
The plaintiff acknowledges that it is a foreign corporation with a principal place of business in Massachusetts. The plaintiff argues, however, that its activities fall within the exception enumerated in § 33-920 (b)(6)[3]. In support of its argument, the plaintiff cites Alfred M. Best Co., Inc. v. Goldstein, 124 Conn. 597, 1 A.2d 140
(1938) and Eljam Mason Supply, Inc. v. Donnelly Brick Co., 152 Conn. 483,208 A.2d 544 (1965).
In Alfred M. Best Co., Inc. v. Goldstein, supra, 124 Conn, 597, the plaintiff's agent solicited Connecticut attorneys for listing in its legal directory. The plaintiff, a New York corporation, had an office in Hartford, was listed in the telephone directory and received calls at its Hartford office. Contracts were approved in Connecticut by the agent, although they were subject to final acceptance by the plaintiff at its home office in New York. Under these facts, the court held that the plaintiff was not transacting business within the state. The Supreme Court stated:
"It is generally held that the soliciting of orders . . . where the orders so obtained are subject to acceptance or rejection by the corporation in another State, does not constitute transacting business within the first named State so as to subject the corporation CT Page 10542 to statutes prescribing conditions upon foreign corporation for doing business therein."[4] Id., 603.
The Supreme Court thus found error in the trial court judgment and held that the plaintiff corporation was not transacting business in this state so as to become amenable to the provisions of the statutes requiring the taking out of a license and filing a copy of its charter.
In Eljam Mason Supply, Inc. v. Donnelly Brick Co., supra, 152 Conn. 483, the plaintiff, a New York corporation, purchased brick from the defendant, a Connecticut corporation, under a contract made in New York. The plaintiff did not maintain any salesmen, an office, a bank account, a telephone or a post office box in Connecticut. All orders were placed with the defendant by telephone from New York. Under these circumstances, the court held that the plaintiff was not transacting business in Connecticut within the meaning of § 33-396 and was not subject to the provision of § 33-412 requiring a certificate of authority as a prerequisite to the right to maintain an action here.[5]
Similarly, here, the plaintiff is not "transacting business" as that phrase is defined in the current statute. The plaintiff accepted all offers at its principal place of business in Massachusetts. The president of the plaintiff, Della Morte, testified on July 24, 2000, that he alone was authorized to accept agreements. Della Morte testified that he is located in Massachusetts and that all contracts are made final through him, in the Massachusetts office. Given the foregoing case law interpreting the statutory phrase "transacting. business" as it appears in General Statutes § 33-920 and the evidence submitted on the July 24, 2000 hearing, the conclusion that the plaintiff's activities with the defendant do not amount to "transacting business" is inescapable. The plaintiff specifically falls within the enumerated exception to "transacting business" in § 33-920 (b)(6) in that the plaintiff solicited and obtained orders through its employees or agents and said orders required the acceptance of Della Morte, in Massachusetts, before they became contracts. Thus, the defendant's defense alleging that the plaintiff lacks corporate capacity does not defeat the plaintiff's showing of probable cause.
 b. The Uniform Commercial Code does not govern the transaction between the plaintiff and the defendant
The defendant argues that the agreement between it and the plaintiff is governed by the Uniform Commercial Code ("UCC") as a transaction in the sale of goods. The defendant contends that because the plaintiff did not plead its action under the UCC, the plaintiff cannot establish probable CT Page 10543 cause. Common law claims are barred if a UCC provision governs the transaction. Bead Chain Mfg. Co. v. Saxton Products, Inc., 183 Conn. 266,270, 439 A.2d 314 (1981). The transaction between the parties is not for the sale of goods, therefore, the UCC does not govern, and the defendant's defense is without merit and consequently, does not defeat the probable cause established by the plaintiff.
Article 2 of the UCC "applies to transactions in goods. . . ." General Statutes § 42a-2-102. Under the UCC, "goods" mean "all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities covered by Article 8 and things in action." General Statutes § 42a-2-105.
The UCC is to be "liberally construed and applied to promote its underlying purposes and policies." General Statutes § 42a-1-102 (1).Fidelity Casualty Co. v. Constitution National Bank, 167 Conn. 478,485, 356 A.2d 117 (1975). While it is true that the Code incorporates, by reference, supplementary general principles of contract law and of the law merchant, § 42a-1-103, such supplemental bodies of law cannot displace those provisions of the Code that are directly applicable. BeadChain Mfg. Co. v. Saxton Products, Inc., supra, 183 Conn. 270. Article 2 applies to all contracts for the sale of goods, whether those goods be existing at the time of sale or whether they are to be specially manufactured. Id.
The defendant cites Bardon Tool Mfg. Co., Inc. v. Torrington Co., judicial district of Hartford/New Britain at New Britain, Docket No. 473455 (October 31, 1996, Arena, J.) for the proposition that the UCC applies in this case and thus, preempts the plaintiff's common law claim. In Bardon Tool, however, the plaintiff supplied parts to the defendant Torrington Co. which placed an order for parts and then refused to pay for the parts it ordered and accepted. The court in Bardon Tool granted the defendants' motion to strike count one of the plaintiff's complaint holding that the action was a dispute over a transaction involving goods, governed by Article 2 of the UCC. Unlike the facts in BardonTool, however, the facts in this case involve services rendered by the plaintiff. The plaintiff here provided a conversion service to the defendant. The exchange between the present two parties did not involve the manufacture of goods. The essence of what was being bargained for was the performance of a conversion service in exchange for a fee. Consequently, the UCC does not apply to these facts.
In Incomm, Inc. v. Thermo-Spa, Inc, 41 Conn. Sup. 566, 595 A.2d 954
(1991), the court held that a contract between a manufacturer and an advertising agency for the production of a physical layout of a brochure CT Page 10544 that could be taken to a printer was not a contract for "goods" governed by the Uniform Commercial Code. The Incomm court held that because the essence of what was purchased was work, labor and services, the contract was for a purchase of "services," rather than goods, thus, the UCC did not apply.
Similarly, here, the essence of what was purchased was the work, labor and services of the plaintiff. The plaintiff was hired to perform a translation type service in exchange for which the defendant would compensate the plaintiff $60,000. The plaintiff was asked to "port" the defendant's Clearspeech software to the "C54x platform." (Complaint, ¶ 1.) The software product already existed, it was not a "good" in the sense that it would be manufactured for the defendant. The plaintiff simply was engaged to "port" the already existing software to a new platform, a "C54X platform."
Because the transaction between the parties is not for the sale of goods, the UCC does not govern. Furthermore, the plaintiff has properly pled its cause of action under common law breach of contract. The plaintiff's common law action, therefore, is not preempted by the UCC. Because the UCC is not implicated in this controversy for the reasons already expressed, the court will not address the defendant's arguments that the plaintiff breached additional UCC provisions such as § 42a-2-213, § 42a-2-602 (1), § 42a-2-314 and § 42a-2-315.
The plaintiff has established the existence of an agreement between it and the defendant. The plaintiff has further established that there is probable cause to substantiate the validity of its claim. Therefore, this court is required by law to grant the plaintiff's application for prejudgment remedy as requested.
MELVILLE, J.